**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STARLING ENDEAVORS LTD., and
ENTREPRENEUR HOLDING, LTD,

    Plaintiffs/Movants,

    v.

CRESCENDO VENTURES IV, LLC,

    Defendant/Respondent.
_____/

No. C 06-1250 PJH

**ORDER DENYING PLAINTIFFS' MOTION TO VACATE ARBITRATION AWARD**

Plaintiffs' motion to vacate the arbitration award came on for hearing on March 29, 2006, before this court. Having read the parties' papers and carefully considered their arguments and the relevant legal authorities, and good cause appearing, the court DENIES Starling's motion.

**BACKGROUND**

Plaintiffs Starling Endeavors, Ltd. and Entrepreneur Holding, Ltd (together "Starling") are investment companies incorporated in the Cayman Islands and managed and owned by the Jawa family, who currently reside in Dubai, United Arab Emirates. Dickey Decl., Exh. 1 at 22. Starling is a limited partner investor in Crescendo, IV L.P. ( the "Partnership Fund"), a Delaware limited partnership, that was formed in 2000 as a telecommunications and e-business venture capital fund. Defendant Crescendo Ventures IV, LLC ("Crescendo"), is a Delaware limited liability company, and the general partner of the Partnership Fund, responsible for the Partnership Fund's overall management.

Starling constitutes two of 92 limited partner investors in the Partnership Fund. The

Partnership Fund was formed March 10, 2000, pursuant to a limited partnership agreement ("LPA") between the 92 limited partners and Crescendo. *See* Tietjen Decl., Exh. A.[1] The 92 limited partners agreed collectively to commit capital of approximately $585 million to the Partnership Fund. Starling agreed to contribute a total of $11 million.

The LPA includes an arbitration clause, which provides that:

> Any controversy or claim arising out of or relating to this Agreement, or the breach hereof, shall be settled by arbitration in San Francisco, California, in accordance with the rules, then obtaining, of the American Arbitration Association. Any award shall be final, binding and conclusive upon the parties. A judgment upon the award rendered may be entered in any court having jurisdiction thereof.

Tietjen Decl., Exh. A at § 10.15. The LPA also contains a choice of law provision. It provides that: "[t]his Agreement shall be governed by and construed under the laws of the State of Delaware as applied to agreements among Delaware residents made and to be performed entirely within Delaware." *Id.* at § 10.4.

On January 23, 2003, Crescendo filed arbitration demands against Starling with the American Arbitration Association ("AAA"), which transferred administration of the demands to the AAA division known as the International Centre for Dispute Resolution ("ICDR"). Crescendo claimed that Starling was in default on its agreement to make capital contributions to the Partnership Fund, and sought an award of the contributions plus costs and expenses pursuant to the LPA. Crescendo, the general partner to the Partnership Fund, was the only claimant. The Partnership Fund itself was not a claimant. *See* Dickey Decl., Exh. 4.

That same day, January 23, 2003, Starling also filed arbitration demands against Crescendo, the Partnership Fund itself, David Spreng, and Jeffrey Tollefson, principals of the management company that operates the day-to-day business of the Partnership Fund.

---

[1] The LPA was executed and signed by the "General Partner," Crescendo, and an attorney-in-fact for the "Limited Partners." The court cites to the LPA attached to the Tietjen Decl. as opposed to the one attached to the Dickey Decl. because Crescendo claims, and Starling has not disputed, that the version Starling attached to the Dickey Decl. is not the operative LPA.

2

The majority of Starling's claims were directed at Crescendo and Spreng and Tollefson, and included claims for breach of fiduciary duties, breach of the LPA, negligent supervision of staff, and violation of § 17200 of the California Business and Professions Code. Starling also alleged violation of the California Corporations Code by all of the parties, and a claim against the Partnership Fund alone for an alleged violation of the federal Investment Company Act of 1940. *Id.* at 41.

However, on August 24, 2004, the arbitration tribunal ("tribunal") determined that the individuals, Spreng and Tollefson, and the Partnership Fund "were not proper parties to the arbitration." Dickey Decl, Exh. 1 at 14; Exh. 5 ("Procedural Order 7") at 2. The tribunal reasoned that the Partnership Fund "was not a signatory to the [LPA] containing the arbitration agreement in any capacity." Exh. 5 at 2. As for Spreng and Tollefson, the tribunal concluded that they had "signed the agreement for the express sole purpose of joining in it for a specified limited number of provisions that did not include the arbitration agreement." *Id.* In its February 9, 2006 order (also "Procedural Order 11"), the tribunal further explained its reasoning (as promised by the August 24, 2004 order).

The tribunal noted that Starling had argued that the policy favoring arbitration required the inclusion of Spreng, Tollefson, and the Partnership Fund. While recognizing that "various courts in the USA have identified a so-called 'policy' in favour of arbitration," the tribunal concluded that "such a policy is not sufficient *on its own* to transform non-signatories into parties to an arbitration agreement." Dickey Decl., Exh. 6 at 4. It reasoned that "the case law does not create a new . . . principle that an unwilling non-signatory to an arbitration agreement may be forced to have a claim against it determined by private arbitrators rather than in the relevant sovereign court having jurisdiction . . . , except in closely identified and defined circumstances. Such circumstances include *alter ego* situations and fact scenarios in which the unwilling third party has, by its conduct, become a party to the transaction agreement that contains the arbitration agreement." *Id.*

The tribunal also rejected Starling's arguments that the Partnership Fund's status as

3

a third party beneficiary bound it to arbitrate as if it were a signatory itself. The tribunal relied on a Third Circuit case applying Delaware law in concluding that the Partnership Fund could not properly be considered a third party beneficiary to the LPA. The tribunal further rejected Starling's arguments that Spreng and Tollefson could be required to arbitrate under agency principles, and that equitable estoppel barred the Partnership Fund from denying that it was a party to the LPA. *See id.* at 6-7.

However, contrary to the implication in Starling's papers before this court, that the tribunal's order prohibited it from pursuing much of its case, Starling's remaining claims against Crescendo (which constituted the majority of its claims) went forward. In fact, Starling had already been permitted extensive discovery on its claims, and the tribunal held a lengthy thirteen day hearing and subsequently issued its ninety-four page decision.

On September 4, 2004, soon after the tribunal's August 2004 ruling that the Partnership Fund, Spreng, and Tollefson were not proper parties to the arbitration, Starling moved to dismiss Crescendo's claims against it, arguing that pursuant to the LPA, only the Partnership Fund itself – not Crescendo – was entitled to enforce the limited partners', including Starling's capital contribution obligations. *See* Dickey Decl., Exh. 7 at 2. Crescendo opposed the motion, and the tribunal held the motion in abeyance until conclusion of the hearings.

On November 18, 2005, the tribunal issued a unanimous partial final award (hereafter "award").[2] *See* Dickey Decl., Exh. 1. The tribunal rejected all of Starling's claims against Crescendo. It ruled in favor of Crescendo on its claim against Starling, and ordered Starling to pay $2,346,192 plus interest in capital contributions. It further rejected Starling's motion to dismiss the default claim and concluded that Crescendo had standing to bring the claim under the LPA.

Starling filed its complaint and motion before this court on February 21, 2006.

---

[2]The tribunal reserved ruling on the portion of arbitration costs to be borne by Starling.

4

**DISCUSSION**

Starling brings this motion under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, to vacate the arbitration award. Starling raises two issues in its complaint and motion to vacate the arbitration award. It contends: (1) that the Partnership Fund's default claim against Starling was non-arbitrable in light of the tribunal's decision that the Partnership Fund was not a proper party to the arbitration; and (2) that the tribunal's ruling that a 2002 amendment of the LPA was valid constitutes a "manifest disregard of the law."

A.    Standards of Review

1.    Arbitration Generally

The parties agree that the FAA applies to this case. The FAA "gives federal courts only limited authority to review arbitration decisions, because broad judicial review would diminish the benefits of arbitration." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (citing *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc)). Under the FAA, if a party seeks a judicial order confirming an arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Confirmation is required "even in the face of erroneous findings of fact or misinterpretations of law." *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 906 (9th Cir. 1986) (citation and quotation omitted).

Section 10 permits vacatur only

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

5

9 U.S.C. § 10(a).

The grounds set forth in § 10(a) "afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera*, 341 F.3d at 997. The "exceeded their powers" provision of § 10(a)(4) allows vacatur only when arbitrators purport to exercise powers that the parties did not intend them to possess or otherwise display a manifest disregard for the law. *Id.* at 1002. Arbitrators exceed their powers in this regard not when they merely interpret or apply the governing law incorrectly, but when the award is "completely irrational," *French*, 784 F.2d at 906, or exhibits a "manifest disregard of law," *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1059-60 (9th Cir. 1991). *See Kyocera*, 341 F.3d at 997.

> The risk that arbitrators may construe the governing law imperfectly in the course of delivering a decision that attempts in good faith to interpret the relevant law, or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4).

*Id.* at 1002-03.

### 2. Arbitrability

The Supreme Court has described "arbitrability" as a "disagree[ment] about whether the [parties] agreed to arbitrate the merits" of the dispute. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 942 (1995). The Court held that who – the court or the arbitrator – "has the primary authority to decide arbitrability turns upon what the parties agreed." *Id.* at 943. If the parties agreed to "submit the arbitrability question itself to arbitration," "then the court's standard for reviewing the arbitrator's decision about [arbitrability] should not differ from the [deferential] standard courts apply when they review any other matter that the parties have agreed to arbitrate." *Id.* In other words, "the court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Id.*

6

However, if "the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *Id.* The Court held that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Id.* The Court, however, added one "important qualification applicable when courts decide whether a party has agreed that arbitrators should decide whether a party has agreed that arbitrators should decide arbitrability." *Id.* This initial qualification is that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is *clear and unmistakable* evidence that they did so." *Id.* at 944.

The Court noted that "[i]n this manner the law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or amibiguity about the question '*whether* a particular merits-related dispute is arbitrable." *Id.* at 944-45. The Court reasoned that "given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.*

B.     Applicable Law

As noted, the LPA contains a choice of law provision by which the parties designated that Delaware law would apply. The court queried the parties at the March 29, 2006 hearing as to which law they contended this court should apply to the issues. Both parties agree that Delaware law applies to the substantive contract interpretation issues. Additionally, both parties also agree that federal law applies to the application of the FAA to this case, including the determination of the appropriate standard of review and the

7

elucidation of the appropriate standards of review.[3]

C. Analysis

    1. Tribunal's Denial of Starling's Motion to Dismiss Default Claim based on Crescendo's Alleged Lack of Standing

        a. Proceedings Below

In its September 2004 motion to dismiss, Starling argued that pursuant to the "clear and unambiguous terms of the LPA," "only the Partnership Fund is entitled to enforce the obligations of Limited Partners to make capital contributions." Dickey Decl., Exh. 7 at 2. Starling argued that Crescendo and its counsel, as drafters of the LPA, "distinguished between the rights, duties and obligations of the Partnership Fund versus those of the General Partner, [Crescendo]." *Id.*

In particular, Starling relied on §§ 3.5(a) and (b) of the LPA. Section 3.5(a) provides in pertinent part that:

> (a) If a Partner [limited partner] fails to pay any amount which it is required to pay to the Partnership on or before the date when such amount is due and payable, such [limited] Partner shall be deemed to be in default hereunder ("a Defaulting Partner"), and written notice of default shall be given to such Limited Partner by the General Partner by certified or registered mail. The Partnership shall be entitled to enforce the obligations of each [limited] Partner to make the contributions to capital required in this Agreement and shall have all remedies available at law or in equity in the event any such contribution is not so made. In the event of any legal proceedings relating to a default by a Defaulting Partner, such Defaulting Partner shall pay all costs and expenses incurred by the Partnership, including attorneys' fees, if the Partnership shall prevail.

Section 3.5(b) then provides in pertinent part:

> (b) In addition to the remedies provided under Paragraph 3.5(a), if the Defaulting Partner does not cure a default in the payment of a required contribution within ten business days of the receipt of the notice specified in Paragraph 3.5(a), the General Partner [Crescendo] (in its sole discretion) may, as liquidated and agreed current damages to the non-defaulting Partners for such default (it being agreed that it would be difficult to fix the actual damages to such Partners), cause and treat the Defaulting Partner's Capital Account to be reduced by an amount equal to fifty percent, which amount shall thereupon become unrestricted assets of the Partnership and

---

[3]The tribunal applied Delaware law, and where federal law was applicable, relied primarily on 3d Circuit cases. *See* Dickey Decl., Exh. 1 at 39; Exh. 6 at 3.

8

> shall be allocated *pro rata* to and among the respective Capital Accounts of the non-defaulting Partners in such proportion as the Capital Account of each such non-defaulting Partner then bears to the sum of the Capital Accounts of all non-defaulting Partners.

Starling argued that the distinction between the rights of the Partnership Fund, in subsection (a), and those of the General Partner, Crescendo, in subsection (b), suggested that Crescendo lacked the right to enforce a limited partner's capital contribution obligations. Starling asserted that pursuant to § 3.5(a), only the Partnership Fund itself may maintain an action against a defaulting partner – not Crescendo. Starling further argued that since the tribunal had dismissed the Partnership Fund as a party to the arbitration, the default claims, which it alleged belonged solely to the Partnership Fund, must be dismissed. *Id.* at 4-5.

Crescendo, on the other hand, argued that LPA section 3.5(a) must be viewed in the context of Crescendo's management duties and obligations set out in par. 7.1 of the LPA, entitled "Management by General Partner," which provides that:

> The General Partner shall have the sole and exclusive right and power to manage, control, and conduct the affairs of the Partnership and to perform any and all acts on behalf of the Partnership that the General Partner deems necessary, advisable or incidental to carry out any or all of the objects and purposes of the Partnership. The General Partner shall have a fiduciary responsibility to the Limited Partners in carrying out its management responsibilities hereunder.

Crescendo thus argued that it was entitled to assert the default claim on behalf of the Partnership Fund. Dickey Decl., Exh. 1 at 78.

The tribunal ruled in Crescendo's favor on the issue, holding that under the LPA, Crescendo was entitled to initiate legal proceedings against a defaulting limited partner on behalf of the Partnership Fund. *Id.* The tribunal further noted that in its March 31, 2003 "Statement of Defense," Starling never challenged Crescendo's ability to bring the default claims, but instead waited one and one-half years to assert the objection only after the tribunal ruled that Starling could not assert claims against the Partnership Fund in the arbitration. *Id.* Accordingly, the tribunal denied Starling's motion to dismiss the claims, and

9

held that Crescendo had standing to bring the default claim on the Partnership Fund's behalf. *Id.*

### b. Parties' Arguments/Analysis
#### i. Standard of Review

The resolution of this issue largely boils down to the standard of review to be applied by this court. Starling argues for a *de novo* standard of review; whereas, Crescendo contends that this court should utilize the more deferential standard of review.

Contrary to how Starling has presented this issue, the court does not find the issue to be one of arbitrability. The issue concerning Crescendo's standing to bring the claim is instead one of contract interpretation.

Starling has never contested Crescendo's standing to *arbitrate* its claims under the LPA. In fact, Starling has conceded that Crescendo has standing to *arbitrate* its claims. Therefore, the issue is not whether Crescendo has standing to arbitrate the default claim, but whether it has standing *under the LPA* to bring the default claims on behalf of the Partnership Fund.

Starling therefore confuses the issue before this court by framing it as whether "the Tribunal's Award must be vacated because the Partnership Fund's default claim against Starling was clearly non-arbitrable in light of the Tribunal's decision that the Partnership Fund was not a proper party to the arbitration." It is true that the issue of whether the Partnership Fund is a proper party to arbitration *is* indeed an issue of arbitrability. However, without explanation, in its motion papers, Starling clearly states that it "does *not* here appeal the [tribunal's] decision to dismiss the Partnership [Fund] as a party to the arbitration." Motion at 6, n.1.[4]   Because the court finds that the issue is one of contract interpretation and not one of arbitrability, the standard of review is not *de novo* but whether the tribunal's decision was "completely irrational," or exhibits a "manifest disregard of law."

---

[4] It continues, though, that "a review of this poorly reasoned decision [to dismiss the Partnership Fund as a party] provides critical background to Starling's appeal."

10

*French*, 784 F.2d at 906. However, even if the court were to determine that the issue was indeed one of arbitrability, as Starling contends, the court concludes that there is clear and unmistakable evidence that Starling agreed to arbitrate the default claims, and that a deferential standard of review nevertheless applies.

Crescendo argues that there is clear and convincing evidence that the parties intended to arbitrate the issue of arbitrability based on (1) the "extreme breadth" of the arbitration clause; (2) Starling's adoption of the AAA rules; (3) federal case law; (4) Delaware law; and (5) Starling's waiver of the issue. In reply, Starling argues that its adoption of the AAA rules do not constitute clear and convincing evidence of its intent to arbitrate arbitrability, and contends that the LPA's arbitration clause itself cannot be construed to evince such an intent to arbitrate.[5]

However, the court need not rely on the AAA rules or the arbitration clause in this case in concluding that clear and convincing evidence exists that Starling intended to arbitrate arbitrability. Instead, Starling's actions – in submitting the issue to the arbitrators and in waiving any objection regarding Crescendo's ability to bring the default claim – constitute the clear and convincing evidence in this case.

In *First Options,* the Supreme Court held that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." *Id.* at 946 (where party was objecting to arbitrators deciding dispute, could not be said to have agreed to "arbitrate arbitrability"). However, where a party "affirmatively submits the issue [of arbitrability] to the arbitrators and urge[s] that they ha[ve] the power to decide it," there is indeed clear evidence that they agreed to arbitrate arbitrability. *See Poweragent Inc. v.*

---

[5] Both parties relied on and discussed the Delaware Supreme Court's decision in *James & Jackson v. Willie Gary, LLC*, 2006 WL 659300 (Del. Sup. Ct. March 14, 2006). In that case, the state court considered the weight that Delaware courts were to afford the adoption of arbitration rules, specifically AAA rules, in determining whether a party had agreed to arbitrate the arbitrability of a contract. However, given the fact that both parties agree that federal law is controlling on the issue regarding the application of the FAA to this case, this court does not find Delaware law particularly persuasive on the issue.

11

*Electronic Data Sys. Corp.*, 358 F.3d 1187, 1191 (9th Cir. 2004); *see also Tristar Pictures, Inc. v. Dir.'s Guild of Am.*, 160 F.3d 537, 540 (9th Cir. 1998) ("[w]hen a party participates in an arbitration and evinces its intent to be bound by the arbitrator's decision on the scope of the arbitration, that party is later estopped from later challenging the arbitrator's authority to determine the issue of the arbitrator's jurisdiction").[6]

The Ninth Circuit's very recent decision in *Schoenduve Corp. v. Lucent Technologies*, also supports this court's conclusion that Starling submitted the issue to the tribunal. 2006 WL 709194 (9th Cir. March 22, 2006). In *Schoenduve*, the Ninth Circuit held that "the scope of the arbitrator's authority is determined not only by the [agreement], but also by the Demand for Arbitration." 2006 WL 709194 at *4. In that case, the court held that because one of the parties, Lucent, had not objected to "the breadth of [the other party's] Demand for Arbitration," it "essentially agreed to arbitrate all issues" included in the Demand. *Id.* Therefore, "[t]he arbitrator necessarily had the authority to decide" those issues because they "were implicit within the submission agreement." *Id.* The court further held that "[t]he scope of the arbitrator's jurisdiction extends to issues not only explicitly raised by the parties, but all issues implicit with the submission agreement." *Id.* at *5. Therefore, under those circumstances, a reviewing court should review the arbitrator's "interpretation of the scope of his powers . . . [with] the same level of deference as his determination on the merits." *Id.*

Here, like the party in *Schoenduve*, Starling did not object to the arbitrability of the

---

[6]These cases are in line with Third Circuit decisions. The Third Circuit has held that where a party voluntarily submits an issue to arbitration without challenging the arbitrability of that issue, and where the merits are ruled on by the arbitrator, the party may be deemed to have waived the arbitrability issue. *See United Indus. Workers v. Gov't of Virgin Islands*, 987 F.2d 162, 168-69 (3d Cir. 1993) (concluding that party's "conduct demonstrate[d] an unmistakable intent to arbitrate its dispute"); *see also Teamsters Local Union v. J.H. Merritt & Co.*, 770 F.2d 40, 42-3 (3d Cir. 1985). "[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Pritzker v. Merrill Lynch*, 7 F.3d 1110, 1114-1115 (3d Cir. 1993) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

12

default claim contained in Crescendo's demand for arbitration.  *See* Dickey Decl., Exh. 3; Tietjen Decl., Exh. C.  Additionally, Starling affirmatively submitted arbitration demands against both Crescendo and the Partnership Fund.  In fact, it was Starling itself, in its motion to dismiss, that asked the tribunal to construe the LPA and decide which party had the ability to enforce the default claim – Crescendo or the Partnership Fund.

Starling never argued that Crescendo was not a proper party to the arbitration.  It was only after the tribunal itself ruled that the Partnership Fund was not a signatory, and therefore not a proper party, that Starling then argued that Crescendo's default claim could not proceed because, pursuant to the LPA, it belonged to the Partnership Fund, which was no longer a party to the arbitration.

Starling argues in reply that it waited until an objection was "ripe" – until after the tribunal dismissed the Partnership Fund from the arbitration.  This argument is not persuasive.  Any objection to Crescendo's ability to assert the claim on behalf of the Partnership Fund was ripe immediately when Crescendo filed the claim – a year and one-half prior to Starling's objection.

For these reasons, there is clear and convincing evidence that Starling submitted the arbitrability issue to the tribunal, and therefore, a deferential standard of review applies.

        ii.        The Tribunal's Decision was not "Completely Irrational" or in "Manifest Disregard of the Law"

"Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law."  *Michigan Mutual Insur. Co. v. Unigard Security Insur. Co.*, 44 F.3d 826, 832 (9th Cir. 1995).  "It must be clear from the record that the arbitrators recognized the applicable law and then ignored it."  *Id.; see also Luong v. Circuit City Stores*, 368 F.3d 1109, 1112 (9th Cir. 2004) (where it was clear that arbitrator had not *ignored* applicable law, there could be no "manifest disregard" regardless of whether arbitrator "got [it] right"); *Carter v. Health Net*, 374 F.3d 830, 838 (9th Cir. 2004) (quoting *Merrill Lynch v. Bobker*, 808 F.2d 930, 934 (2d Cir. 1986) ("judicial

inquiry under the 'manifest disregard' standard is extremely limited. . . .  The governing law alleged to have been ignored by the arbitrators must be well-defined, explicit and clearly applicable")).

Likewise, "[i]f on its face, the award presents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Sovak v. Chugai Pharmaceutical Co.*, 280 F.3d 1266, 1271 (9th Cir. 2002); *see also Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co.*, 933 F.2d 1481, 1485 (9th Cir. 1991).  The court has "no authority to vacate an award solely because of an alleged error in contract interpretation." *Id.*  Where "the parties have authorized the arbitrator to give meaning to language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract."  *Id.* (citing *Sheet Metal Workers Int'l Ass'n v. Ariz. Mechanical*, 863 F.2d 647, 653 (9th Cir. 1988)).  "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  *Id.*[7]

The parties make the same arguments here that they made before the tribunal. Starling contends that only the Partnership Fund – not General Partner Crescendo – had the right or authority to enforce the default claims under the LPA.  Starling argues that pursuant to the clear and unambiguous terms of § 3.5(a), only the Partnership Fund could bring the default claims.  Starling cites to Delaware law regarding contract interpretation for

---

[7]Again, Third Circuit law is in line with that in the Ninth Circuit.  The Third Circuit has held that "manifest disregard for the law" "is established when the arbitrator's award is totally unsupported by principles of contract construction," *Major League Umpires Assoc. v. American League*, 357 F.3d 272, 280 (3d Cir. 2004).  "In reviewing an arbitration award, courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  *Id.*  The court is "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Citgo v. Paper, Allied-Industrial, Chemical & Energy Workers Internat'l Union*, 385 F.3d 809, 816 (3d Cir. 2004).  Similarly, "the award stands even if the court finds the basis for it to be ambiguous or disagrees with the [arbitrators'] conclusions under the law."  *Id.*  "[W]hen an arbitrator has not articulated a rationale for his or her decision, a court will confirm an award if a ground for the arbitrator's decision can be inferred from the facts of the case." *In re Loewen Group International*, 2002 WL 531240 (D. Del. 2002).

14

the proposition that "the specific controls the general – the LPA's general grant of managerial power cannot function to assign to Crescendo what is *expressly omitted* in the specific remedial provisions of the LPA upon an event of default." *See* Brief at 8 (citing *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 173 n. 44 (Del. Ch. 2003)). Starling also relies on a recent Fourth Circuit case for the proposition that an arbitrator may not do violence to the terms of the contract. *See Patten v. Signator Insur. Agency, Inc.*, 2006 WL 598158 (4th Cir. 2006).

Starling further suggests that the tribunal permitted Crescendo to pursue the Partnership Fund's default claims as the "agent" of the Partnership Fund.[8] It contends that allowing Crescendo to pursue the Partnership Fund's remedies as its agent is contrary to the tribunal's ruling that Starling was not able to arbitrate claims against the Partnership Fund itself, as its agent of Crescendo. It further argues that there is no dispute that the default claims *belonged* to the Partnership Fund, and that Crescendo, as its agent, could not acquire any greater rights than the Partnership Fund by virtue of its agency. Thus, Starling contends that since, according to tribunal, the Partnership Fund was not a proper party to the arbitration and not subject to Starling's claims, Crescendo could not arbitrate the Partnership Fund's claims against Starling as its agent.

Crescendo argues that Starling cannot demonstrate that the tribunal's decision was in "manifest disregard" of the law. Crescendo asserts that the tribunal's interpretation of the LPA was not only plausible, but correct. Like Starling, Crescendo makes the same arguments that it made before the tribunal. It asserts that LPA § 3.5(a) is "easily reconciled" with § 7.1.

Although neither party has provided this court with the relevant Delaware contract law, as noted, there is no dispute that pursuant to the LPA's choice of law provision, Delaware contract law applies in determining whether the tribunal's decision was

---

[8]This appears to be a mischaracterization, though. The tribunal did not utilize agency principles in support of its conclusion on the issue. *See* Dickey Decl., Exh. 1 at 78-79.

15

completely irrational or in manifest disregard of the law.

Construction of contract language is a question of law. *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). The primary consideration in interpreting a contract is to "attempt to fulfill, to the extent possible, the reasonable shared expectations of the parties at the time they contracted." *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. 2003). In ascertaining intent, Delaware courts utilize an "objective" theory of contracts. *See Haft v. Haft*, 671 A.2d 413, 417 (Del. Ch. 1995). Under this approach, a contract's "construction should be that which would be understood by an objective reasonable third party." *In re Stone & Webster,* Inc., 2005 WL 1036556 at *6 (D. Del. 2005) (citations omitted). Therefore,

> [w]here parties have entered into an unambiguous integrated written contract, the contract's construction should be that which would be understood by an objective reasonable third party. An inquiry into the subject unexpressed intent or understanding of the individual parties to the contract is neither necessary nor appropriate where the words of the contract are sufficiently clear to prevent reasonable persons from disagreeing as to their meaning.

*Id.* (citing *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)). The court, or in this case, tribunal, was required to "determine whether the contractual language in dispute, when read in the context of the entire contract is ambiguous." *Id.*

Ambiguity exists only when a contractual provision is "reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc,* 616 A.2d at 1196. Contractual language "is not rendered ambiguous simply because the parties do not agree upon its proper construction." *Id.* However, inconsistent provisions may create ambiguity in a contract. *Id.*

Here, the court concludes that the tribunal's reconciliation of LPA §§ 3.5(a) and (b), along with § 7.1, was not implausible or in manifest disregard of the law. The tribunal essentially found that the LPA provisions were not inconsistent or ambiguous. It noted that the language of § 3.5(b) expressly provided that its remedies were "in addition to the

16

remedies" regarding default in § 3.5(a).  The court is not persuaded otherwise by the cases cited by Starling.

Accordingly, the court DENIES Starling's motion to vacate on this ground.

> 2. The Tribunal's Ruling that the December 2002 Amendment to LPA § 3.5(b) was Enforceable Against Starling
>
>> a. Tribunal's Ruling

In December 2002, more than two-thirds of the limited partners approved an amendment to LPA par. 3.5(b).  Dickey Decl., Exh. A at 84.  The amendment was apparently proposed and enacted in order to better protect the interests of non-defaulting partners.  *Id.*  In sum, it

> granted the General Partner [Crescendo] the right to reduce a defaulting partner's capital account to the lesser of 50% of either its capital account or fair value capital account (capital account adjusted for unrealized gain or loss) and reduced the defaulting partner's right to allocations of future income by 50%.

*Id.*

Before the tribunal, Starling claimed that the adoption of the amendment, to which it did not consent, constituted an illegal effort by Crescendo to amend the LPA to benefit itself, and that the amendment was void and unenforceable under par. 10.7(a) of the LPA.  That paragraph provides:

> This Agreement (and any exhibits to this Agreement) and the Management Agreement may be amended only with the written consent of the General Partner [Crescendo] and Two-Thirds in interest of the Limited Partners.  No amendment shall, however, (i) increase the Capital Commitment of a Limited Partner or modify the allocation of Net Income or Loss or distributions allocable to any Limited Partner without the written consent of such Limited Partner, (ii) increase the Management Fee or alter or waive the terms of Paragraph 8.2 or Article XI without the unanimous consent of the Limited Partners, (iii) alter or waive the terms of this Paragraph 10.7(a) without the unanimous consent of the Limited Partners, or (iv) alter or waive the terms of Paragraphs 6.4(e), 6.4(h), 7.5, 9.2(c), 10.14, 10.17, 10.18, 10.19, 10.20, 10.21 or 10.23 without the written consent of each affected Limited Partner.  Any proposed amendment that would change the requisite percentage of Limited Partner interests required to take any action shall require the approval of such existing requisite percentage.  The General Partner shall promptly

17

> furnish copies of all amendments to this Agreement and the Partnership's Certificate of Limited Partnership to all Partners.

Tietjen Decl., Exh. A at 39.

Starling contended that the amendment fell within the class of amendments that modify the allocation of profit and loss under LPA par. 10.7(a)(i), and therefore, required Starling's consent. Dickey Decl., Exh. 1 at 86. Because Starling refused to consent to the amendment, it argued that the amendment was invalid per se – not simply with respect to Starling only. Crescendo responded that the amendment did not affect any limited partner's allocation of net income or distributions *upon adoption*, but only had an effect upon a limited partner's net income and distributions *if it defaulted under the LPA. Id.* Because none of the limited partners, including Starling, were in default at the time of the amendment's adoption, Crescendo argued that the amendment did not require unanimous consent under the LPA.

The tribunal again ruled in favor of Crescendo, finding that the amendment did *not* modify the allocation of profit and loss under the LPA. It also concluded that the amendment was not designed solely to target Starling, whom Crescendo and others feared might default. *Id.* Accordingly, the tribunal held that the amendment to par. 3.5(b) was validly adopted.

### b.    Parties' Arguments/Analysis

There is no dispute that a deferential standard of review applies to this issue.

Again, the parties' arguments here are nearly identical to those they made before the tribunal. Starling contends that the tribunal's decision cannot be reconciled with § 10.7(a) of the LPA. Starling argues that the tribunal erred in interpreting § 10.7(a) to apply only to amendments that operated to modify net income of a limited partner *upon the date of adoption of the amendment.* Instead, Starling asserts that the plain language of LPA section 10.7(a) also applies to amendments that may modify a limited partner's net income upon future application, and therefore, Starling's consent was required.

18

Crescendo argues that the tribunal's decision was correct because: (1) the amendment did not affect any limited partner's allocation of net income at the time it was adopted; (2) the amendment would only affect a limited partner's net income and distributions if the limited partner defaulted; (3) that no limited partner, including Starling, was in default at the time the amendment was adopted. Therefore, Crescendo argues that Starling's consent was not required. It further notes that Starling has offered no new evidence or arguments before this court, and no basis for this court to conclude that the tribunal's decision is in manifest disregard of the law.

Again, as with the prior issue, although neither party has provided this court with the relevant Delaware contract law, there is no dispute that pursuant to the LPA's choice of law provision, Delaware contract law applies in determining whether the tribunal's decision was completely irrational or in manifest disregard of the law. The same Delaware law set forth above applies to this issue.

The issue required the tribunal to interpret LPA section 10.7(a). In doing so, the tribunal interpeted the section much more narrowly than that advocated by Starling. However, the narrow interpretation was not implausible or in manifest disregard of Delaware contract law.

For this reason, the court DENIES Starling's motion to vacate on this ground as well.

## CONCLUSION

The court DENIES Starling's motion to vacate the arbitration award for the reasons set forth above. As for the first issue, it really is not one of arbitrability to which a *de novo* standard of review could apply. However, even if the court construed the issue as one of arbitrability, there is clear and convincing evidence that Starling agreed to arbitrate the issue. Therefore, either way, a deferential standard of review applies to the first issue – as well as the second issue.

Because the tribunal's decisions on both issues were not implausible interpretations

19

of the contract or in manifest disregard of the law, the court DENIES Starling's motion on both issues.

## PARTIES' SEALING REQUESTS

Both parties have requested that all documents in this case be filed under seal pursuant to L.R. 79-5(b) and 7-11. The bases for the requests is a confidentiality agreement that the parties entered into with respect to the arbitration, *see* Dickey Decl., Request to Seal, Exh. A, and a confidentiality provision in the LPA. *See id.* at Exh. B. The parties, however, have not complied with either L.R. 79-5 or with this court's standing order. The request is not narrowly tailored to seek sealing only of sealable material. It is the extraordinarily unusual case that would require sealing of the entirety of *all* documents filed in one case, including briefs, and such a broad request is not justified based on the showing made. Accordingly, the request is DENIED. Any further request to seal some portion of some of the documents must comply with L.R. 79-5(c).

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 31, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge

20